ANTHONY A. JACOBUS et al., appellants,

*v.*

JOHN L. MUNN, respondent.

When an executor and trustee, charged with the care and renting of real estate, is shown to have received for his personal use, gifts in money from those employed by him to make repairs, and from tenants, a decree merely requiring him to account to the estate for moneys so received, does not impose an adequate penalty for such misconduct.  Upon such proof in ordinary cases the trustee should be deprived of commissions; but when the circumstances show that his services have been such that the deprivation of all commissions would impose too heavy a penalty for the offence, the court will, in considera-tion thereof, deprive him only of so much as will serve to mark the court's disapprobation of his conduct, and to be a warning to others.

On appeal from a decree of the court of chancery based on the opinion of the chancellor, reported in *Jacobus* v. *Munn, 10 Stew. Eq. 48.*

Jacobus *v.* Munn.

*Messrs. C. & R. W. Parker,* for appellants.

*Mr. H. C. Pitney,* for respondent.

The opinion of the court was delivered by

MAGIE, J.

This appeal brings into question the decree of the court of chancery made upon exceptions to the report of a master, before whom the respondent, Munn, had been ordered to state and settle his accounts as executor of Anthony A. Jacobus, deceased. The points raised by the exceptions and the facts shown before the master, are detailed so fully in the opinion of the chancellor, that it is unnecessary to repeat them.

On this appeal it is contended that the chancellor erred in not charging against the executor the loss alleged to have been sustained by reason of his having rented the real estate in his charge, for a long time, at less rents than could have been obtained.  It is further urged that the executor ought also to have been charged with certain amounts claimed to have been unnecessarily and wastefully expended by him in repairs of the houses of which he had charge.

After a careful review of the evidence, I find myself unable to discover sufficient proofs of neglect or mismanagement in these respects, or of any such loss to the estate, as would justify a different conclusion from that reached by the chancellor, or would warrant any specific charge against the accountant. There is much in the evidence to raise grave suspicions, but not enough to require the court to further charge the executor on these claims under the circumstances of the case.

Nor does the evidence warrant a reversal of the chancellor's conclusions in reference to appellants' claim that the executor was derelict in duty in respect to investments or the use of the money of the estate.

It is, however, further urged that the decree below does not properly deal with the executor in regard to his conduct in managing the estate.  It was amply proved and ingenuously admit-

ted by him that he had habitually received from those employed by him to repair the estate property, and at least from one tenant of such property, gratuities or gifts in money.

The chancellor very properly held that such transactions on the part of a trustee are not to be allowed, and required the executor to account to the estate for such sum as, under the meagre evidence of the amount, would probably cover what he had acquired by conduct so grossly improper. This sum was fixed at $500, to which was added $300 to cover interest. But he declined to deprive the executor of any of his commissions (which were fixed in the report at the highest rate permitted by law) or to impose costs upon him.

This leniency of dealing with this trustee was apparently based upon the notion that he did not know his conduct was improper, and that the estate has not suffered loss therefrom. I am unable to take that view. The person who, for twenty-five years, managed this property, must have had intelligence enough to perceive that the acceptance by him, for his personal use, of $50 per year for five successive years, from a tenant of the estate, was a diminution of the revenue of the estate for his benefit, for which no excuse could be pleaded *in foro conscientiæ*. The payment of gratuities by workmen whose bills he was to scrutinize and only pay if reasonable and correct, could not be viewed by any one of competent intellect as other than an inducement to diminish scrutiny or bring about the payment without due examination.

Nor do I think that it is shown that the estate has suffered no loss. While the evidence lacks sufficient force to establish and charge the executor with positive loss other than the gains he received, it by no means follows that loss did not occur.

But whether loss to the estate resulted or not, is, in my judgment, immaterial. For if it be admitted that no loss resulted beyond that acquired by the executor, I am still of the opinion that a decree against an executor who has thus misconducted himself, which only deprives him of his improper gain, does not inflict an adequate penalty upon him. If such a rule should be established, it would be attended, I apprehend, with disastrous results. To restrain the tempted trustee from misconduct, there

Jacobus v. Munn.

needs some other penalty than the mere liability, in case of dis-
covery, to be forced to account to the estate for ill-gotten gains.
On grounds of plain public policy, courts ought not to relax the
obligations of trustees, or relieve them from adequate penalties.

Were the question now raised for the first time and in an
ordinary case, I should strongly incline to the view that the
executor should be deprived of all his commissions. But it is
within the discretion of the court whether to deprive him of all
or of only part of his commissions—a discretion to be exercised
in view of all the circumstances of the case.

In this case the executor has been in the active management
of the estate for about twenty-five years. During that time he
has received and disbursed a large amount of money. It may
fairly be inferred that no serious diminution of the estate has
occurred. He has, moreover, in almost every year of his service,
stated and settled his accounts as executor, in the orphans court
of the proper county. These accounts—most of them, at least—
seem to have been allowed by that court, without any objection,
although some of the grounds of objection now urged, and out
of which the discovery of this misconduct came, seem to have
been long ago known to some of appellants. The accounts included,
as the master reports, commissions to the amount of $9,818.46.
The decree approves the report which fixes the commissions at a
higher rate and the amount of $11,620.74. In this respect I think
the decree deals too leniently with the executor. In my view, he
should be allowed the commissions contained in the accounts
rendered to the orphans court, and no more.

By reason of this misconduct I also think that the executor
should have been required to pay the costs of this suit in the
court of chancery.

The amounts which will thus be charged against the executor
will be no more than is proper to mark the court's disapproba-
tion of his conduct.

My conclusions therefore are, that the decree should be af-
firmed, except so far as it awards commissions to the executor,
and directs costs to be paid out of the estate or by the bene-
ficiaries under the will. In these respects the decree should be

reversed and modified so as to allow the executor only $9,818.46 for his commissions and to charge him with the costs of the suit below.

The appellants ought also to have their costs in this court, to be paid by respondent.

*Decree unanimously reversed.*